UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EDUARDO MIRANDA,

                Petitioner,

            - against -

HAROLD D. GRAHAM, Superintendent of
Auburn Correctional Facility,

                Respondent.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
11-CV-1803 (PKC)

PAMELA K. CHEN, United States District Judge:

      Petitioner Eduardo Miranda ("Petitioner"), proceeding *pro se*, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence entered on May 18, 2006 in the Supreme Court of the State of New York, Kings County. Following a guilty plea, Petitioner was convicted of one count of Robbery in the First Degree and one count of Robbery in the Second Degree. He received an indeterminate sentence of sixteen years to life on each count, the sentences to run concurrently.

      Petitioner challenges his conviction on three grounds: (1) the trial court erred by refusing to permit Petitioner to withdraw his guilty plea after he claimed that it was not knowing and voluntary; (2) the trial court erred by sentencing Petitioner without a presentence report; and (3) Petitioner's appellate attorney provided ineffective assistance of counsel by failing to: (a) argue on appeal that the trial court should have inquired further into Petitioner's claim of innocence when he moved to withdraw his guilty plea; and (b) inform Petitioner of his right to file for leave to appeal to the Court of Appeals of New York and to seek such appeal on Petitioner's behalf. For the reasons set forth below, the petition for a writ of *habeas corpus* is DENIED.

## BACKGROUND

**I.     Relevant Facts**

    **A.     Incidents and Charges**

On January 18, 2005, Petitioner robbed Linda Postell and, in the course of committing the crime and his subsequent flight, caused serious physical injury to Postell by pushing and kicking her. (Affidavit in Opposition to Petition for Writ of *Habeas Corpus* ("Opp. Br."), Dkt. No. 5, at ¶¶ 4, 11.)  On February 26, 2005, Petitioner entered a hair salon and robbed Ruthy Agron and Kelsa Perez, and attempted to rob Hilda Quesada. (*Id.* ¶ 5.)  On February 27, 2005, Petitioner robbed Robert Clark and, later that same day, robbed Sean Sonderegger. (*Id.* ¶¶ 5–6.) During the incidents on February 26 and February 27, Petitioner displayed a handgun. (*Id.* ¶¶ 5–6.) For his conduct on January 18, Petitioner was charged with one count of Robbery in the Second Degree, one count of Robbery in the Third Degree, two counts of Grand Larceny in the Fourth Degree, one count of Petit Larceny, and one count of Assault in the Third Degree. (*Id.* ¶ 7.) For his conduct on February 26 and February 27, Petitioner was charged with four counts of Robbery in the First Degree, four counts of Robbery in the Third Degree, one count of Attempted Robbery in the First Degree, four counts of Grand Larceny in the Fourth Degree, four counts of Petit Larceny, one count of Attempted Petit Larceny, and five counts of Menacing in the Second Degree. (*Id.* ¶ 8.)

    **B.     Guilty Plea**

Petitioner appeared before Justice Patricia DiMango of the New York Supreme Court (the "trial court") on March 13, 2006. (Respondent's Exhibits 1–6 ("Resp. Ex. A"), Dkt. No. 5-2 at ECF[1] 2.) Petitioner was represented by James Kildoff Esq. (*Id.* at ECF 3:6–7.) Pursuant to a plea

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

agreement, Petitioner pleaded guilty to one count of Attempted Robbery in the First Degree for attempting to rob Ms. Quesada on February 26, 2005 and one count of Robbery in the Second Degree for robbing Ms. Postell on January 18, 2005. (*Id.* at ECF 4–6.) The trial court conducted an extensive plea allocution, during which she asked Petitioner, among other things, if he was satisfied with his attorney's help, if he authorized his attorney to enter the guilty pleas, if he knew that the case had been ready to go to trial, if he knew what rights he was giving up by pleading guilty, and if he was pleading guilty freely and voluntary and without any undue coercion. (*Id.*) Petitioner replied in the affirmative to these inquiries. (*Id.*)

      **C.    Sentencing Hearing and Motion to Withdraw Guilty Plea**

Petitioner appeared before the trial court again on May 18, 2006 for sentencing. (*Id.* at ECF 10.) Petitioner was represented by new counsel, Howard Greenberg Esq. (Resp. Ex. A at ECF 11:3–4.) Petitioner moved to withdraw his guilty plea claiming that he had been coerced into pleading guilty by his previous attorney. (*Id.* at ECF 11–12.) Petitioner further claimed that at the time he pleaded guilty he was confused. (*Id.* at ECF 14.) He claimed that he had been seeing a psychiatrist on Rikers Island. (*Id.*) He stated that Mr. Kildoff "ate his mind" into taking the plea. (*Id.* at ECF 14:23.) Petitioner claimed that he was innocent of the charges and that he could prove his innocence at trial and urged the court to permit him to withdraw his guilty plea. (*Id.* at ECF 14–15.) The trial court stated that based on Petitioner's criminal history, he was being disingenuous about being coerced into a guilty plea and that he had been asked at his plea allocution if he was pleading voluntarily. (*Id.* at ECF 13.) The court did not permit Petitioner to withdraw his guilty plea and sentenced him to sixteen years to life on each count with the sentences to run concurrently. (*Id.* at ECF 16–18.)

### D. Direct Appeal

Petitioner, represented by Barry S. Zone, Esq., timely appealed his conviction to the Second Department of the Appellate Division of the Supreme Court of New York ("Appellate Division"). (*Id.* at ECF 28.) Petitioner raised three issues on appeal: (1) that he did not waive his right to appeal because his waiver was not knowing and voluntary; (2) that he should have been permitted to withdraw his guilty plea because it was not knowing and voluntary; and (3) that the case should have been remanded for a presentence report to determine Petitioner's ability to plead guilty. (*Id.* at ECF 29.) The government conceded that Petitioner had not waived his right to appeal, but the Appellate Division ruled against Petitioner on the second and the third issues, and affirmed his conviction. *See People v. Miranda*, 67 A.D.3d 709 (N.Y. App. Div. 2009). Petitioner applied *pro se* for leave to appeal to the Court of Appeals of New York ("Court of Appeals"). (Resp. Ex. A at ECF 71.) The Court of Appeals denied the application. *People v. Miranda*, 15 N.Y.3d 922 (2010).

### E. Error *Coram Nobis*

In April 2010, Petitioner, moving *pro se*, applied to the Appellate Division for a writ of error *coram nobis* claiming ineffective assistance of appellate counsel. (Respondent's Exhibits 6–9 ("Resp. Ex. B"), Dkt. No. 5-3 at ECF 2.) The Appellate Division denied the application stating that Petitioner had failed to establish that he had been denied the effective assistance of appellate counsel. *People v. Miranda*, 76 A.D.3d 1105 (N.Y. App. Div. 2010). Petitioner moved *pro se* for leave to appeal to the Court of Appeals. (Resp. Ex. B at ECF 75.) The Court of Appeals denied the application. *People v. Miranda*, 16 N.Y.3d 833 (2011).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), a federal district court "shall entertain an application for a writ of *habeas corpus* [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "[F]ederal *habeas corpus* relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); *see also Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) ("A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.").

If petitioner's claim "was adjudicated on the merits in State court proceedings," the district court may only grant the petition if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is often referred to as "AEDPA[2] deference".

An "'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). Review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when

---

[2] "AEDPA" refers to the Antiterrorism and Effective Death Penalty Act of 1996, pursuant to which 28 U.S.C. § 2254 was created.

presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at an opposite result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

A state court decision is an "unreasonable application of" clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410; *see also Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal *habeas* court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

A *pro se* petition for *habeas corpus* relief must be "construe[d] . . . to raise the strongest arguments that it suggests." *Barnes v. Burge*, 372 F. App'x 196, 199 (2d Cir. 2010). *See also Brownell v. Krom*, 446 F.3d 305, 310 (2d. Cir. 2006) ("Because [Petitioner] proceeded *pro se* below, we read his papers liberally and interpret them to raise the strongest arguments that they suggest." (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)) (internal quotation marks omitted).

## DISCUSSION

### I. Request to Withdraw Guilty Plea

Petitioner claims that the trial court erred in refusing to permit him to withdraw his plea and proceed to trial. (Petition for Writ of *Habeas Corpus* ("Pet."), Dkt. No. 1, at ¶ 17.) Petitioner's claim rests on the following arguments: (1) that he was coerced by his first trial attorney into making the guilty plea, and therefore his plea was not knowing and voluntary and (2) that he was

6

suffering from a mental illness which prevented him from fully understanding the rationale behind the plea, and therefore he was not competent to plead guilty. (*Id.*) Furthermore, Petitioner contends that the trial court erred in not holding an evidentiary hearing to inquire into his claim that his guilty plea was not knowing and voluntary and also erred in not holding a competency hearing. (*Id.*) The Court examines each of these arguments in turn.

### A. Coercion by trial attorney

Petitioner claims that his trial attorney coerced him into pleading guilty by telling him that he was facing 75 years in prison and urging him not to take a chance with a trial. (*Id.*) Petitioner, therefore, claims that his guilty plea was not knowing and voluntary. (*Id.*) Because the Appellate Division has ruled on this claim (Resp. Ex. A at ECF 47–48), AEDPA deference applies. 28 U.S.C. § 2254(d)(1)(2).

"It is well-settled that the Due Process Clause of the Constitution requires an affirmative showing that an accused's plea is entered knowingly and voluntarily before the trial court may accept the plea." *Lopez v. Walker*, 239 F. Supp.2d 368, 373 (S.D.N.Y. 2003). "That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley*, 506 U.S. 20, 29 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). "[A] plea is not 'voluntary' if it is obtained through coercion that is 'overbearing' to the defendant's will." *United States v. Speed Joyeros, S.A.*, 204 F. Supp.2d 412, 423 (E.D.N.Y. 2002) (citing *Brady v. United States*, 397 U.S. 742, 750 (1970)). However, "[a]dvice [or] even strong urging [to plead guilty] by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion." *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976). Furthermore, when a defendant states under oath at the plea allocution that no threats have been made against him to secure his plea, a "strong presumption of verity" attaches to such a

"solemn declaration[] in open court." *Blackledge v. Allison*, 431 US 63, 74 (1977). Such declarations "are generally treated as conclusive in the face of the defendant's later attempts to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir.1999).

Here, the Appellate Division rejected Petitioner's claim that he was coerced into pleading guilty, explaining that "defense counsel's statement that the defendant faced a possible sentence of 75 years if convicted on all counts did not constitute a threat or coercion but, rather, was a proper explanation of the possible maximum sentence if the defendant were convicted." *Miranda*, 67 A.D.3d at 710. The Appellate Division also noted that Petitioner's claim was "belied by his responses at the plea allocutions that no one had threatened, coerced, or forced him to plead guilty." *Id.*

The Appellate Division was correct in its conclusion that the explanation of the maximum sentence by Petitioner's counsel did not constitute coercion. Petitioner's attorney, in advising him that he could face a sentence of 75 years if convicted, simply conveyed the true maximum possible sentence he could face if found guilty at trial. Petitioner offers no evidence to prove that he was not free to reject his attorney's counsel and proceed to trial or that his guilty plea was not knowing and voluntary. As the Second Circuit has explained, no undue coercion has taken place when an attorney acting in the best interests of his client merely offers advice to a defendant to plead guilty, after considering such issues as the strength of the prosecution's case and the relative weakness of the defense's case. *Lunz*, 533 F.2d at 1327. Petitioner has not proffered any evidence that his attorney did not have his welfare at heart or that the attorney did not weigh such factors as the strength of the prosecution's case or the defense's case before advising Petitioner to plead guilty. The Appellate Division was also correct in its determination that the subsequent claims of coercion did not negate Petitioner's prior assertion at the plea allocation that he was not coerced into

8

pleading guilty. Petitioner's subsequent claims that he was coerced were thus shown to be baseless. Therefore, the Appellate Division's finding that the trial court did not err in refusing to permit Petitioner to withdraw his guilty plea was not "contrary to" or an "unreasonable application of" clearly established federal law, nor was it an "unreasonable determination of the facts". 28 U.S.C. § 2254(d)(1)(2).

This claim is therefore denied.

### B. Mental illness

Petitioner claims that he was suffering from a mental illness due to which he did not understand the rationale behind the guilty plea and therefore he was not competent to plead guilty. (Pet. ¶ 17.) The Appellate Division has ruled on this claim (Resp. Ex. A at ECF 47–49), and thus AEDPA deference applies. *See* 28 U.S.C. § 2254(d)(1)(2).

The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment requires that "[a] criminal defendant may not . . . plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)). The standard for competency is whether the defendant "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)). "[T]he lack of aberrational behavior by [P]etitioner at his plea hearing . . . is . . . evidence . . . to support the trial court's finding that [P]etitioner met this standard of competency." *Sanchez v. Senkowski*, No. 93-CV-4385, 1996 WL 1057150, at *4 (E.D.N.Y. June 19, 1996). "The determination of competency is an issue of fact, entitled to deference upon federal *habeas* review." *Lopez*, 239 F. Supp.2d at 375. For the purposes of "an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be

9

correct." 28 U.S.C. § 2254(e)(1). Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

Here, the Appellate Division rejected Petitioner's claim stating that "[t]he defendant's conclusory allegation that he was confused at the time of the pleas is . . . belied by the record. The defendant stated that he understood the nature of the pleas, the rights he was waiving, and the crimes to which he was pleading guilty." *Miranda*, 67 A.D.3d at 710. The Appellate Division noted that "[t]he defendant's responses were lucid and appropriate, and he expressly stated that he understood all of the court's questions." *Id.*

Petitioner has not pointed to any evidence in the record to rebut the Appellate Division's determination that Petitioner was competent to plead guilty, and therefore fails to meet the clear-and-convincing-evidence burden of proof that applies to this claim. Petitioner has merely made a conclusory assertion that he was suffering from a mental illness for which he was seeing a psychiatrist on Rikers Island, and thus did not understand the rationale behind his guilty plea. (Pet. ¶ 17.) Therefore, the Appellate Division's determination of competency is presumed by this Court to be correct. Consequently, the Appellate Division's conclusion that the trial court did not err in refusing to permit Petitioner to withdraw his guilty plea due to his alleged mental illness was not "contrary to" or an "unreasonable application of" clearly established federal law, nor was it an "unreasonable determination of the facts". 28 U.S.C. § 2254(d)(1)(2).

This claim is therefore denied.

### C. Evidentiary hearing and competency hearing

Petitioner claims that the sentencing court should have held an evidentiary hearing to inquire into his claim that his guilty plea was not knowing and voluntary. (Pet. ¶ 17.) Petitioner also claims that the trial court should have held a competency hearing to investigate his claim that

he was seeing a psychiatrist and was therefore not mentally competent to plead guilty.[3] (Pet. ¶ 17.) Having been adjudicated by the Appellate Division (Resp. Ex. A at ECF 47–48), this claim is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d)(1)(2).

"The [federal] Constitution does not require a state court to give a defendant a factual hearing before deciding on a motion to withdraw a guilty plea." *Redd v. Woughter*, No. 09-CV-9819, 2012 WL 2864514, at *6 (S.D.N.Y. July 12, 2012). In other words, "a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." *Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003). Nonetheless, "[a] court may choose to order a competency hearing where evidence suggests that further inquiry into the defendant's mental state is required." *Lopez*, 239 F. Supp.2d at 374. "That [too] is, however, a matter within the discretion of the court." *Id.*

Petitioner claims that the trial court should have held an evidentiary hearing and a competency hearing to inquire into his claims that his plea was coerced and that he was suffering from a mental illness, respectively. (Pet. ¶ 17.) Petitioner further claims that the trial court should have called his first attorney, James Kildoff, to testify at the evidentiary hearing. (*Id.*) The Appellate Division ruled that "the [trial court] did not improvidently exercise its discretion in denying, without an evidentiary hearing, the defendant's motion to withdraw his guilty plea." *Miranda*, 67 A.D.3d at 711. Since a criminal defendant does not have a constitutional right to an evidentiary hearing for a motion to withdraw a guilty plea, and a trial court may choose to hold a

---

[3] Petitioner has made this argument under his second claim that the trial court should have ordered a presentence report prior to sentencing him. (Pet. ¶ 17.) To the extent that it is a State law claim, it is discussed below. *See infra* Part II. However, since a *pro se* petition for *habeas corpus* relief must be "construe[d] . . . to raise the strongest arguments that it suggests," the Court also examines whether Petitioner was entitled to such a hearing under federal law. *Barnes*, 372 F. App'x at 199.

11

competency hearing at its discretion, the Appellate Division's ruling was not "contrary to" or an "unreasonable application of" clearly established federal law, nor was it an "unreasonable determination of the fact", especially given that there was no evidence in the record before the trial court "suggest[ing] that "further inquiry into [Petitioner's] mental status [was] required". *Lopez*, 239 F. Supp.2d at 374; 28 U.S.C. § 2254(d)(1).

This claim is therefore denied.

## II. Presentence Report

Petitioner claims that the trial court should have ordered a presentence report pursuant to New York Criminal Procedure Law (CPL) § 390.20 prior to sentencing him. (Pet. ¶ 17.) Petitioner also claims that the trial court should have ordered a mental health evaluation pursuant to New York CPL § 390.30(2). (*Id.*) However, as Respondent correctly asserts, "[a] federal court may not issue [a] writ [of *habeas corpus*] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle*, 502 U.S. at 67 ("[F]ederal *habeas corpus* relief does not lie for errors of state law.") (internal quotation marks omitted); *Howard*, 406 F.3d at 121 ("A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court."). Since this claim is based solely on applications of New York statutes, Petitioner is not entitled to federal *habeas corpus* relief.

This claim is therefore denied.

## III. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel did not provide him with effective assistance of counsel, because counsel failed to: (1) argue that the trial court should have inquired further into the substance of Petitioner's claim of innocence when he moved to withdraw his guilty plea, and (2) inform him of his right to file for leave to appeal to the Court of Appeals and to pursue such

12

leave for him. (Pet. ¶ 17; Response to Opposition for a Writ of *Habeas Corpus* ("Reply Brief"), Dkt. No. 10, at ¶¶ 67–73.)

Petitioner raised his claim of ineffective assistance of appellate counsel through an application for a writ of error *coram nobis* before the Appellate Division. (Resp. Ex. B at ECF 4.) The Appellate Division denied the application stating simply that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." *Miranda*, 76 A.D.3d at 1105. When "a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." *Wilson v. Mazzuca*, 570 F.3d 490, 499 (2d Cir. 2009) (quoting *Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003)). The Court examines each of Petitioner's arguments in turn.

### A. Failure to raise claim of innocence

Petitioner asserts that his appellate counsel should have argued to the Appellate Division that the trial court erred by failing to inquire further into the substance of his claim of innocence when he moved to withdraw his guilty plea and that this claim was properly preserved for appellate review. (Pet. ¶ 17.) Petitioner maintains that he was prejudiced by his appellate counsel's actions because failure to raise this claim precluded him from raising it in subsequent post-conviction proceedings. (Reply Brief ¶ 38.) Although the Appellate Division did not explain its rationale for rejecting this claim, the Court finds that that decision was not an unreasonable application of clearly established Supreme Court precedent.

"Under *Strickland v. Washington*, in order to demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner must show (1) that his counsel's representation 'fell below an objective standard of reasonableness,' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

13

different.'" *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). "[A] petitioner may establish constitutionally inadequate performance of appellate counsel if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). "In *Jones v. Barnes*, the Supreme Court explained that appellate counsel need not raise every colorable claim on behalf of a client [to be effective]." *Chrysler*, 806 F.3d at 123 (citing *Jones v. Barnes*, 463 U.S. 745, 752–54 (1983)).[4] "While it is of course possible, notwithstanding [*Jones v.*] *Barnes*, to succeed on a *Strickland* claim based on counsel's failure to press an argument on appeal, the Supreme Court has cautioned that these claims are difficult precisely because appellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (internal quotation marks and citations omitted).

Petitioner's appellate counsel raised three issues on direct appeal to the Appellate Division: (1) that Petitioner had not waived his right to appeal; (2) that Petitioner should have been permitted to withdraw his guilty plea because it was not knowing and voluntary; and (3) that the case should have been remanded for a proper presentence report to determine Petitioner's ability to plead guilty. (Resp. Ex. A at ECF 29.) Petitioner argues that his appellate counsel should also have raised

---

[4] For Petitioner's benefit, the Court notes that all of his citations to *Jones v. Barnes* in his Reply Brief (*see* Reply Brief, ¶¶ 44–45, 48–50) that are favorable to his position are citations to the Second Circuit opinion, 665 F.2d 427 (2d Cir. 1981), *rev'd*, 463 U.S. 745 (1983), as opposed to the Supreme Court opinion, 463 U.S. 745 (1983). While the Second Circuit's ruling in the case is favorable to Petitioner, the ruling was reversed by the Supreme Court.

the claim that the trial court erred in not inquiring into the substance of his claim of innocence when he moved to withdraw his guilty plea. (Pet. ¶ 17.) However, the failure to make this additional argument on appeal was not ineffective.

"[A] defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." *Hines*, 318 F.3d at 162. The New York Court of Appeals has also held that "[w]hen a defendant moves to withdraw a guilty plea, the fact-finding procedures to be followed rest largely in the discretion of the Judge to whom the motion is made." *People v. Baret*, 11 N.Y.3d 31, 33 (2008) (internal quotation marks omitted) (quoting *People v. Tinsley*, 35 N.Y.2d 926, 927 (1974)). "Only in the rare instance will a defendant be entitled to an evidentiary hearing." *Id.* (quoting *Tinsley*, 35 N.Y.2d at 927). Since New York appellate courts review a trial judge's decision to hold or not hold an evidentiary hearing for a motion to withdraw a guilty plea under an abuse-of-discretion standard, Petitioner's appellate counsel reasonably could have concluded, after his assessment of the record, that challenging the trial court's decision not to hold an evidentiary hearing would not have been fruitful. In any case, since New York courts leave the fact-finding procedures for a motion to withdraw a guilty plea largely to the discretion of the trial judge and the trial court had held an extensive plea colloquy, the trial court's failure to hold an evidentiary hearing was not "[a] significant and obvious issue[]." *Lynch*, 789 F.3d at 311 (quoting *Mayo*, 13 F.3d at 533). The issues that appellate counsel did raise were not "clearly and significantly weaker" either. *Id.* Appellate counsel won a concession of error from the government on the first issue (Resp. Ex. A at ECF 60 n.2), and the second and third issues raised substantial constitutional and statutory rights. Therefore, appellate counsel did not "omit[] significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Lynch*, 789 F.3d at 311.

Because Petitioner cannot demonstrate that his counsel was ineffective for not raising the hearing issue on appeal, the Appellate Division's decision rejecting that claim counsel was not an unreasonable application of clearly established Supreme Court precedent.

This claim is, therefore, denied.[5]

B. **Failure to inform petitioner of right to file for leave of appeal to the Court of Appeals of New York and move for leave**

Petitioner claims that his appellate counsel was ineffective for not informing Petitioner of his right to file for leave of appeal and for not seeking such leave after Petitioner requested it. (Reply Brief ¶¶ 68–73.) The Appellate Division did not explain its rationale for rejecting this claim on the merits. However, the Court finds that the Appellate Division's decision was not an unreasonable application of clearly established Supreme Court precedent.

Petitioner claims that his appellate counsel, Mr. Zone, failed to provide him with a copy of the decision rendered by the Appellate Division. (*Id.* ¶ 68.) Petitioner had to move *pro se* to secure a copy and further move *pro se* to secure an extension of time to file an application for leave to appeal to the Court of Appeals. (*Id.*) The rules of the Second Department of the Appellate Division require retained or assigned counsel to notify clients of their right to file an application for leave to appeal and upon the request of the client to promptly file the application. *See* 22 N.Y. COMP. CODES R. R. & REGS. tit. 22, § 671.4(a) (2017). Upon Petitioner's filing of his motion for extension

---

[5] Petitioner also claims deficient performance by his appellate counsel because he never reviewed Petitioner's medical records, did not move for a CPL § 730.10 hearing, did not identify any mental disease suffered by Petitioner or any medication being taken by Petitioner to the Appellate Division, and did not present any exhibits. (*See* Reply Brief, ¶¶ 55–58.) However, on direct appeal, Petitioner's counsel was bound by the record of prior proceedings and was not at liberty to make any legal arguments based on facts not already contained in the record. *See People v. Piparo*, 520 N.Y.S.2d 621, 622 (App. Div. 1987) ("[T]he claims raised in [a] brief [that] rely on facts not contained in the record . . . are not reviewable by this court."); *People on Complaint of Bailey v. Dennis*, 208 N.Y.S.2d 522, 540 (New Rochelle City Ct. 1960) ("It is fundamental that a decision by an appellate court must of necessity be restricted to the record before it.").

16

of time to file the application, the Clerk of the Court of Appeals sent three letters and left two telephone messages for Mr. Zone, requesting him to fulfill his duties under the aforementioned rule. (*See* Resp. Ex. B at ECF 56.) After failing to elicit a response from Mr. Zone, the Clerk of the Court of Appeals notified the Departmental Disciplinary Committee of the First Department of the Appellate Division (the "Disciplinary Committee"). (*Id.* at ECF 57.) The Disciplinary Committee, after its investigation, found that Mr. Zone had violated the Rules of Professional Conduct and formally admonished him. (*See* Reply Brief at ECF 27.)

There is little doubt that Mr. Zone's conduct here was egregious and unbecoming of the legal profession, especially given the Disciplinary Committee's finding that he violated the Rules of Professional Conduct. However, Petitioner does not have a federal constitutional right to counsel that requires his attorney to file an application for leave to appeal and therefore, Mr. Zone's conduct does not entitle him to federal *habeas* relief. The Supreme Court has ruled explicitly and clearly on this issue. "[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals." *Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)). "Since [Petitioner] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application [for leave to appeal to the Court of Appeals] timely." *Id.* at 587–88. Therefore, the Appellate Division's rejection of Petitioner's ineffective assistance claim based on Mr. Zone's failure to inform Petitioner of his right to seek leave to appeal and to seek such leave for Petitioner was not an unreasonable application of clearly established Supreme Court precedent. Furthermore, although Mr. Zone's conduct was found to have violated State court rules, those violations do not provide a basis for federal *habeas* relief. Consequently, this claim is denied.

## CONCLUSION

For the foregoing reasons, the petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 is DENIED. Because Petitioner fails to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 11, 2018
       Brooklyn, New York